IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREN OSWALD,<br>    Plaintiff,<br><br>v.<br><br>HERBERT GIBBONS and CITY OF PHILADLPHIA,<br>    Defendants. | CIVIL ACTION<br><br><br>NO. 10-6093 |

DuBOIS, J.                                                                                                                                                                                                                                                   May 27, 2011

**M E M O R A N D U M**

**I.    INTRODUCTION**

This case arises out of Lauren Oswald's allegation that she was subject to gender- and race-based discrimination at her job as a Philadelphia police officer. On the basis of this discrimination, plaintiff asserts claims against her former supervisor Sergeant Herbert Gibbons and the City of Philadelphia ("the City") under 42 U.S.C. § 1983 ("Section 1983"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq.; and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq.

Defendants have moved to dismiss plaintiff's Amended Complaint. For the reasons discussed below, defendants' motion is granted in part and denied in part. Specifically, the claims asserted in Counts I and II, by agreement, are limited to Gibbons. Count III, plaintiff's Monell claim, is not dismissed. The claims in Count IV against Gibbons are dismissed, and the claims in Count IV against the City are limited to those arising out of failure to provide timely and accurate court notices. Count V is dismissed in its entirety.

## II. BACKGROUND[1]

Oswald joined the Philadelphia Police Department ("the Department") in 2002. (Am. Compl. ¶ 13.) In 2007 Gibbons became Oswald's supervisor. (Id. ¶ 15.) Plaintiff alleges that, beginning at that time, Gibbons made unwanted sexual advances toward her. (Id. ¶ 16-18.) In January 2008 and again in April 2008, Oswald requested to be transferred to a different unit. (Id. ¶¶ 18-20.) Both of these requests were denied. (Id.)

Oswald alleges that after these transfer requests, Gibbons began to discriminate against her more actively by, inter alia, issuing her written reprimands for being late, even though other officers were not reprimanded for the same behavior. (Id. ¶ 23.) Plaintiff further avers that on April 11, 2008, while she was sitting at her desk, Gibbons reached for a desk drawer "skimming Plaintiff's crotch area." (Id. ¶ 25.) The same day, Oswald reported the alleged sex and race discrimination to two lieutenants and the captain of her district and again requested a transfer out of the district. (Id. ¶ 26.) Plaintiff contends that this complaint was not investigated, and her request for a transfer was denied.

Plaintiff also filed a complaint with the Department's internal EEO unit alleging harassment and employment discrimination based on her race and her sex. (Id. ¶ 27.) She avers that after filing this EEO complaint she was subject to retaliatory treatment, including being improperly added to the sick abuse list and being deprived of correct and timely notices of her scheduled court appearances. (Id. ¶¶ 30, 35.)

Presently before the Court is defendants' Motion to Dismiss Plaintiff's Amended Complaint. The motion is fully briefed and ripe for review.

---

[1] The factual background is taken from plaintiff's amended complaint and is set forth only to the extent necessary to address the questions before the Court.

## III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff . . . ." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

In Twombly, the Supreme Court utilized a "two-pronged approach," which it later formalized in Iqbal. Iqbal, 129 S. Ct. at 1950; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Under this approach, a district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. Iqbal, 129 S. Ct. at 1950. The court then assesses "the 'nub' of the plaintiff['s]

complaint – the well-pleaded, nonconclusory factual allegation[s] . . . to determine" whether it states a plausible claim for relief. Id.

## IV. ANALYSIS

Defendants' motion to dismiss presents four arguments. First, defendants argue that plaintiff's First Amendment retaliation claim in Count I and her race discrimination claim in Count II, both of which are asserted under 42 U.S.C. § 1983, must be dismissed because defendants cannot be held liable under Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694-95 (1978). Second, defendants contend that plaintiff's Monell claim in Count III must be dismissed because plaintiff has failed to identify any official policy of the City that caused her injury as required by Monell. Third, defendants argue that plaintiff's Title VII claims in Count IV must be dismissed as to defendant Gibbons because Title VII does not provide for liability of individual supervisors and must be dismissed as to the City because they are time barred. Finally, defendants contend that plaintiff's PHRA claims in Count V must be dismissed as time barred because plaintiff failed to timely file a claim with the Pennsylvania Human Relations Commission ("PHRC").

The Court addresses these arguments in order. With respect to the first and second arguments, the Court concludes that plaintiff has properly pleaded Section 1983 claims against Gibbons in Counts I and II and against the City in Count III. Next, the Court concludes that Count IV, plaintiff's Title VII claim, must be dismissed against Gibbons because Title VII does not provide for individual liability. Plaintiff's Title VII claim against the City will not be dismissed in so far as it is based on a failure to provide timely and accurate court notices because plaintiff asserts both a plausible claim for relief and timely filing before the Equal Employment

Opportunity Commission ("EEOC"). Count V, Plaintiff's PHRA claim against the City, must be dismissed as time barred because plaintiff failed to file with the PHRC within the 180-day statute of limitations.

A. Plaintiff's First Amendment Retaliation and Race Discrimination Claims (Counts I and II)

Defendants contend that plaintiff's First Amendment retaliation and race discrimination claims, which are asserted under Section 1983, must be dismissed because plaintiff has not alleged that her injury resulted from a policy or custom of the City as required by Monell. Plaintiff responds that defendants have misconstrued her Amended Complaint in that Counts I and II do not assert claims against the City, but only against Gibbons. (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 7.) In fact, Counts I and II discuss both defendants. (See Am. Compl. ¶¶ 38-51.) However, given the clarification provided by plaintiff in her opposition to defendants' motion and the fact that Count III restates the same claims against the City, the Court limits Counts I and II as applying only to Gibbons.

The requirements enumerated in Monell do not apply to claims against individual government officials. See Monell, 436 U.S. at 691. Aside from their argument under Monell, defendants do not contend that plaintiff has failed to state a claim against Gibbons in Counts I and II. Thus defendant's motion to dismiss is denied as to Counts I and II.

B. Plaintiff's Monell Claim (Count III)

Count III is plaintiff's Monell claim against the City. Defendants contend that plaintiff has failed to allege the necessary elements to support a Monell claim against the City. Municipalities cannot be held liable under Section 1983 under a theory of vicarious liability.

-5-

Monell, 436 U.S. at 694. Rather, municipal liability under Section 1983 is limited to those circumstances in which the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. Following subsequent elaboration from the Supreme Court, the Third Circuit has outlined three circumstances in which municipal liability will attach under Section 1983:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted). The Third Circuit has also made clear that liability can be imposed on a municipality based on its failure to train its employees where plaintiff can show a pattern of violations or where that failure to train demonstrates deliberate indifference on the part of the municipality. Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).

Defendants argue that (1) plaintiff has not alleged a plausible custom or policy on the part of the city that caused her constitutional injury, (2) plaintiff has not identified a policymaker establishing the policy or custom that caused her alleged injury, and (3) to the extent that plaintiff has alleged a policy of discrimination, those allegations are inadequate under Iqbal. These arguments fail.

Plaintiff's Amended Complaint alleges that the City failed to "train its supervisors . . . in civil rights, employment laws, and the proper use of the City's disciplinary rules" and that this failure to train manifests deliberate indifference on the part of the City and is the ultimate cause

of the harms suffered by plaintiff. (Am. Compl. ¶¶ 55-56.) Although plaintiff faces a high burden in establishing Monell liability based on a custom or practice of a failure to train, such an allegation is sufficient to state a claim under Monell. See Berg, 219 F.3d at 276.

Defendants next contend that plaintiff's allegation that the department failed to train is insufficient to meet the plausibility standard announced in Iqbal and Twombly. This Court has noted, however, that "Twombly emphasized context." In re Blood Reagents Antitrust Litig., 756 F. Supp. 2d 623, 631 (E.D. Pa. 2010). Read in light of her entire Amended Complaint, in which plaintiff alleges discrimination and retaliation implicating not only Gibbons but also two supervising lieutenants, a captain, the members of her squad, and others within the department, plaintiff's allegation of a failure to train takes on an air of probability and rises above a mere conclusory allegation. Plaintiff has thus alleged facts sufficient to support a plausible claim for relief against the City.

Defendants' motion to dismiss is denied as to Count III.

C. Plaintiff's Title VII Claim (Count IV)

Defendants raise two arguments supporting dismissal of plaintiff's Title VII claims. First defendants argue that plaintiff's claim against Gibbons must be dismissed because Title VII does not permit claims against individual supervisors. Second, defendants argue that plaintiff's Title VII claims should be dismissed in their entirety because they were not timely filed with the EEOC.

With respect to the first argument, defendant is correct that Title VII does not permit claims against individual employees. See Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d

1061, 1078 (3d Cir. 1996). Thus, the Court dismisses plaintiff's Title VII claims against Gibbons.

Defendant argues that plaintiff's Title VII claims against the City should also be dismissed because they were not timely filed with the EEOC. Plaintiff's Amended Complaint alleges that "[o]n or about October 12, 2009, within 300 days of the discriminatory act, Plaintiff filed a formal complaint . . . with the Equal Employment Opportunity Commission, which was cross filed with the Pennsylvania Human Relations Commission." (Am. Compl. ¶ 37.)[2] The Amended Complaint further avers that plaintiff received a right-to-sue letter from the Department of Justice to sue for discrimination and retaliation. (Id. ¶ 71.) The issuance of a right to sue letter, without more, is not determinative of timely filing before the EEOC. See Kocian v. Getty Ref. & Mktg. Co., 707 F.2d 748, 754 n. 9 (3d Cir. 1983). Thus, the Court must determine whether plaintiff alleges a plausible adverse employment action within the 300-day period to support her allegation of timely filing.

While plaintiff does not specify which discriminatory act formed the basis for her EEOC complaint, the Amended Complaint does allege a cognizable adverse employment action within the 300-day period. Specifically, plaintiff alleges that since February 2009, as part of the discrimination and retaliation against her, "[p]laintiff has been sent court notices late or untimely, court noticed for the wrong day, or has not received notices at all." (Am. Compl. ¶¶ 35, 65.) Read in the light most favorable to plaintiff, such interference with her job duties

---

[2] In other places, plaintiff's Amended Complaint cites the date for the EEOC filing as either June 15, 2008 or June 15, 2009. (Am. Compl. at ¶¶ 69, 80.) In the response to the motion to dismiss, however, plaintiff clarified that the date of filing was October 2009. (See Pl.'s Opp'n at 13, 16.)

constitutes an adverse employment action.[3]  See Patterson v. Johnson, 505 F.3d 1296, 1298 (D.C. Cir. 2007) (noting that, under some circumstances, interference with management duties can qualify as an adverse employment action).  The Court thus concludes that, on the present state of the record, with respect to a Title VII claim premised on the withholding of timely and accurate court notices, plaintiff has alleged discrimination within the 300-day statute of limitations to raise her right to relief above a speculative level.

Hence, defendants' motion to dismiss plaintiff's Title VII claim is denied as to plaintiff's Title VII claim based on job interference in the form of failure to provide proper notice for her court appearances.

### D. Plaintiff's PHRA Claim (Count V)

Defendants argue that plaintiff's PHRA claims should be dismissed because plaintiff did not timely file them with the PHRC within 180 days, as required by Pennsylvania law.  See 43 Pa. Cons.Stat. § 959(a), (h).  Plaintiff argues that her claims were timely filed with the PHRC because, pursuant to the worksharing agreement between Pennsylvania and the EEOC, a dual filing with the EEOC extends the time limit for filing PHRA claims to 300 days.  Plaintiff's argument misunderstands the applicable law.

---

[3] The other facts asserted as occurring after February 2009, such as the allegation that plaintiff has not received pay stubs (Am. Compl. ¶ 35) and the allegation that plaintiff has been "ostracized and humiliated" (id. ¶ 36), do not independently rise to the level of adverse employment actions.  See, e.g., Longstreet v. Holy Spirit Hosp., 67 F. App'x 123, 127 (3d Cir. 2003) ("'unsubstantiated oral reprimands' and 'unnecessary derogatory comments' do not rise to level of adverse employment action") (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1301 (3d Cir. 1997)); Peace-Wickham v. Walls, No. 09-4690, 2010 U.S. App. LEXIS 26004, at *28 (3d Cir. Dec. 21, 2010) ("[A]llegations of shunning do not amount to an adverse employment action.").  While not themselves the basis of plausible Title VII claims, those allegations may still be relevant as support for plaintiff's allegation that someone in the Department tried to interfere with her job prospects by withholding accurate court notices.  See AMTRAK v. Morgan, 536 U.S. 101 (2002).

In Rosenberg v. Vuotto, another judge in this district was confronted with the same argument by the same lawyers. No. 10-CV-3526, 2010 U.S. Dist. LEXIS 114283, at *24-*25 (E.D. Pa. Oct. 26, 2010). He explained that the effect of the worksharing agreement between Pennsylvania and the EEOC is to extend the federal statute of limitations to 300 days but that this extension does not apply to the state statute of limitations, which remains 180 days. Id. Indeed that law is well established in this Circuit. See Woodson v. Scott Paper Co., 109 F.3d 913, 916 (3d Cir. 1996) ("The worksharing agreement between the PHRC and the EEOC does not operate to satisfy the PHRA's filing requirement."); DuBose v. District 1199c, Nat. Union of Hosp. & Health Care Employees, 105 F. Supp. 2d 403, 411 (E.D. Pa. 2000); Sharp v. BW/IP Int'l, Inc., 991 F. Supp. 451, 457 (E.D. Pa. 1998).[4] Thus the standard for filing claims before the PHRC is 180 days, not 300 days as plaintiff contends.

Plaintiff failed to file within the required period. Thus, the Court concludes that plaintiff's PHRA claim is time barred. Defendant's Motion to Dismiss Count V of the Amended Complaint is granted.

## V. CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss is granted as to the claims against Gibbons in Count IV of the Amended Complaint, granted as to any claims against the

---

[4] Plaintiff cites two cases that, she contends, stand for the proposition that the worksharing agreement does extend the filing deadline for claims before the PHRC. Plaintiff's reliance on these cases is misplaced. The first case states clearly that the 300-day limit applies only to federal claims before the EEOC. Nogar v. Henry F. Teichmann, Inc., 640 F. Supp. 365, 369 (W.D. Pa. 1985) (A claim filed just before the 300-day limit "is untimely for state purposes."). The second case, Kellam v. Independence Charter School, is inapplicable as that decision rests on equitable tolling grounds not relevant in this case. See 735 F.Supp. 248, 255(E.D. Pa. 2010).

City not based on the failure to provide timely and accurate notices of court appearances in Count IV, granted as to Count V, and denied in all other respects. The counts remaining for adjudication are as follows: Counts I and II, limited to defendant Gibbons; Count III; and Count IV, limited to the City and limited to the failure to provide timely and accurate notices of court appearances.

      An appropriate order follows.